040372/19344/MHW/JFM

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARL HEMPHILL,<br><br>        Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC.;<br>SALEH OBAISI; ANN HUNDLY DAVIS;<br>LATONYA WILLIAMS; LOUIS SHICKER;<br>MICHAEL LEMKE; DORRETTA O'BRIEN;<br>and KEVIN HALLORAN,<br><br>        Defendants. | Case Number 15-cv-4968<br><br>Judge Sharon Johnson Coleman |

## THE WEXFORD DEFENDANTS' FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, WEXFORD HEALTH SOURCES, INC., GHALIA OBAISI, as the Independent Executor of the Estate of Saleh Obaisi, M.D. (deceased), LATONYA WILLIAMS, P.A., and ANN DAVIS, M.D., by and through their attorneys, Matthew H. Weller and James F. Maruna, of CASSIDAY SCHADE LLP, and for their Fed. R. Civ. P. 56 Motion for Summary Judgment, state as follows:

1. The Defendants have consented to this Court's jurisdiction and venue by admission in answer to Plaintiff's Complaint. *See* the Wexford Defendants' L.R. 56.1 Statement of Facts ("SOF") at ¶ 1.

2. As an initial matter, the Court should bar Plaintiff's expert Dr. Hellerstein. In his disclosures, Dr. Hellerstein was forced to admit that he previously was retained by Wexford to review and opine on an IDOC case pending in the Southern District of Illinois. (SOF at ¶ 9). A district court has the "inherent power to disqualify expert witnesses where or when it is necessary to protect the integrity of the adversary process, and/or to promote public confidence in the legal

system." *Rosenthal Collins Group, LLC v. Trading Techs. Int'l, Inc.*, No. 05-C-4088, 2008 U.S. Dist. LEXIS 73897, * 3, 2008 WL 4542948 (N.D. Ill. Aug. 15, 2008). "This is especially true where the basis for disqualification is the expert's past relationship with an adversary in litigation." *Id.*

3. Here, a few years ago, Wexford, through its attorneys, retained Dr. Hellerstein to work as an expert witness in a lawsuit involving a claim made by an IDOC inmate. (SOF at ¶ 9). It was completely reasonable for Wexford to assume that a confidential relationship existed with Dr. Hellerstein - or at least that their retained expert would not pop up in another IDOC case a few years later on the other side of the "v." line. Second, Dr. Hellerstein admitted that Wexford's confidential information was provided to him in document form in that prior lawsuit. (SOF at ¶ 9). Dr. Hellerstein also admitted that he frequently spoke with Wexford's attorneys in the prior case. He could not remember how many times he spoke with Wexford's attorneys in that prior case, but testified that it was more than five (5) times. (SOF at ¶ 9). Moreover, because Dr. Hellerstein testified both at deposition and at trial on Wexford's behalf, Dr. Hellerstein met with and participated in "preparation sessions" with Wexford's attorneys prior to giving any testimony. (SOF at ¶ 9). Certainly, proprietary testimony and litigation strategies gleaned from Wexford's prior litigation experience (and/or its attorneys' prior experience) were revealed and discussed with Dr. Hellerstein during these preparation sessions with Wexford's attorneys. This is a clearly conflict and completely unfair to Wexford. Accordingly, the Court should bar Dr. Hellerstein.

4. Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The United States Supreme Court has articulated a three-part test for proving deliberate indifference. The

Plaintiff must prove: (1) the existence of an objective, serious medical need; (2) that the defendant was subjectively aware of a specific, serious medical need or risk; and (3) that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996).

5. In order to defeat this Motion, Plaintiff must first prove the existence of an objective, serious medical need. *Estelle,* 429 U.S. at 107; *Sellers,* 41 F.3d at 1102; *Vance,* 97 F.3d at 991. Here, the Plaintiff admitted that his pain was "on and off." *See* (SOF at ¶ 55) (Plaintiff telling Dr. Obaisi on June 4, 2015 that his pain was "on and off for two years"). Likewise, during this time period he was still working a prison job at Stateville's kitchen performing multiple activities and lifting weights in the prison yard, demonstrating that the "pain" was not impeding his functional abilities. (SOF at ¶ 37; 57). Simply, there is no evidence that this Plaintiff was in the sort of excruciating, severe, activity-altering pain, necessary to constitute an objectively serious medical need.

6. The second element of a deliberate indifference claim – subjective notice – requires that "[a] plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016). Yet, here, Plaintiff actually told these providers that their medical treatment (pain medication and injections) provided him with pain relief - sometimes for months at a time. (SOF at ¶ 46; 49-51).

7. The third element of a deliberate indifference claim is that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle,* 429 U.S. at 107. A medical professional is "entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under these

3

circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008). Here, the evidence confirms that the Wexford Defendants correctly diagnosed the Plaintiff's pain pathology as shoulder impingement and then initiated and followed a logical, progressive plan of treatment starting with conservative treatment and ending with surgery. (SOF at ¶¶ 32-68).

8. Additionally, Dr. Prodromos, the only orthopedic surgeon deposed in this case, testified that he has been treating shoulder impingement for the better part of thirty (30) years and he fully supported the medical care of Dr. Obaisi, Dr. Davis, and PA Williams. (SOF at ¶ 78). Dr. Prodromos testified that if this patient had been sent to him for orthopedic consultation, instead of to the orthopedic surgeon in Galesburg, IL, **Dr. Prodromos would not have recommended surgery or an MRI.** (SOF at ¶ 75). In fact, Dr. Prodromos opined that if this patient presented to Dr. Prodromos as a private patient in his office, **Dr. Prodromos would have recommended only conservative treatment "quite similar" to what the Wexford Defendants provided in this case - pain medication, activity modification, and injections.** (SOF at ¶ 76). Plaintiff's claim fails if even one doctor supports the Wexford Defendants' care. Here, six (6) doctors support their care - including a certified correctional health care provider and an orthopedic surgeon.

9. Finally, without verifying medical evidence of inadequate treatment, a prisoner's self-serving opinion of the quality of his medical treatment is insufficient to raise a genuine issue of material fact. *Walker v. Zunker*, 30 Fed. App'x. 625, 628 (7th Cir. 2002). Likewise, any claim of delayed treatment also requires verifying medical evidence. *Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996). As noted, only one orthopedic surgeon provided testimony in this case - Dr. Prodromos. Dr. Prodromos was adamant that if the Plaintiff had presented to his office for orthopedic consultation, he would not have recommended surgery or an MRI for

4

the Plaintiff. Thus, Dr. Prodromos opined that any claim by Plaintiff that an MRI or surgery was delayed (or should have occurred faster) is false because neither surgery nor an MRI was ever indicated for this patient. (SOF at ¶ 77).

10. Turning to *Monell* liability against Wexford, despite litigating this case for years, Plaintiff still cannot point this Court to a single policy supporting his claim. Absent clear evidence of an unconstitutional policy, the Court should not take the Plaintiff's word and assume that one exists. In *Montague v. Wexford Health Sources, Inc.*, the Seventh Circuit affirmed the District Court's grant of summary judgment to Wexford when an inmate claimed that Wexford maintained an unconstitutional policy or widespread practice, but could produce no evidence of either. 615 F. App'x. 378, 379 (7th Cir. 2015). Second, the Plaintiff has produced no evidence of how other inmates were treated in order to support a "widespread practice" showing. Finally, it bears noting that even if the Plaintiff had met his threshold burden of proof in establishing an unconstitutional policy or widespread practice of Wexford, he still fails the second hurdle of his *Monell* claim - that deliberate indifference actually occurred because of that policy or widespread practice. *See Minix v. Canarecci,* 597 F.3d 824, 832 (7th Cir. 2010).

11. Finally, the Plaintiff has not proven any set of facts that would allow him to recover punitive damages. All providers testified that they never intended to cause the Plaintiff any harm, and that they only desired the best possible medical outcome for the Plaintiff. (SOF at ¶ 70). Therefore, even if this Court finds that there is a question of fact as to the Plaintiff's deliberate indifference claim, it should still find that the Plaintiff will be unable to recover punitive damages, and grant Summary Judgment on this issue.

12. The Wexford Defendants incorporate their memorandum of law and local rule 56.1 statement of facts, filed concurrent with their motion.

WHEREFORE, Defendants, WEXFORD HEALTH SOURCES, INC., GHALIA OBAISI, as the Independent Executor of the Estate of Saleh Obaisi, M.D. (deceased), LATONYA WILLIAMS, P.A., and ANN DAVIS, M.D., pray that this Honorable Court enter an Order granting Summary Judgment in their favor, dismissing the case with prejudice against Plaintiff, awarding fees and costs for having to defend this meritless claim that was pursued maliciously based on the lack of evidence, and for any other relief deemed just.

Respectfully submitted,

WEXFORD HEALTH SOURCES, INC., GHALIA OBAISI, as the Independent Executor of the Estate of Saleh Obaisi, M.D. (deceased), LATONYA WILLIAMS, P.A., and ANN DAVIS, M.D.

By: /s/ James F. Maruna
Matthew H. Weller / ARDC No. 6278685
James F. Maruna / ARDC No. 6313433
CASSIDAY SCHADE, LLP
222 W Adams Street, # 2900
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 - Fax
mweller@cassiday.com
jmaruna@cassiday.com

*Counsel for Defendants,* WEXFORD HEALTH SOURCES, INC., GHALIA OBAISI, as the Independent Executor of the Estate of Saleh Obaisi, M.D. (deceased), LATONYA WILLIAMS, P.A., and ANN DAVIS, M.D.

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2019, I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ James F. Maruna

9080576 JMARUNA;JMARUNA