IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARL HEMPHILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 15-cv-04968 |
| | ) | |
| GHALIAH OBAISI, *et al.*, | ) | Judge Sharon Johnson Coleman |
| | ) | |
| Defendants. | ) | |

## LOCAL RULE 56.1 FILING

Defendants, Louis Shicker, Doretta O'Brien, and Michael Lemke, through their attorney, Kwame Raoul, Attorney General for the State of Illinois, and under Rule 56.1 submit the following statement of material facts:

## EXHIBIT LIST

A. Carl Hemphill's Deposition

B. Michael Lemke's Deposition

C. Doretta O'Brien's Deposition

D. Louis Shicker's Deposition

## LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS

**I. The Parties**

1. Plaintiff, Carl Hemphill, is an inmate incarcerated in the Illinois Department of Corrections ("IDOC") and was housed at Stateville Correctional Center ("Stateville"). (ECF No. 33, at ¶ 1).

2. Defendant Michael Lemke was the former Warden of Stateville from December, 2012, until December, 2013. (ECF No. 33, at ¶ 17; Ex.B at 12:7-11; 13:2-3). Lemke is not a medical professional. (Ex.B 82:9-10).

1

3. Defendant Dorretta O'Brien is a former Assistant Warden of Programs at Stateville. (ECF No. 33, at ¶ 18).

4. Defendant Dr. Louis Shicker was the Medical Director for IDOC. (ECF No. 33, at ¶ 16).

## II. Jurisdiction and Venue

5. This court has jurisdiction pursuant to 28 U.S.C. 1331 and 1343(a)(3), and venue under 28 U.S.C. 1391(b)(2).

## III. Plaintiff's Allegations

6. Plaintiff's Second Amended Complaint alleges that Defendants were deliberately indifferent to Plaintiff's medical needs, in violation of the Eighth Amendment. (ECF No. 33, at ¶ 2).

7. Specifically, Plaintiff alleges that Defendants failed to properly diagnose him, failed to provide medication, failed to provide physical therapy, failed to provide follow-up treatment for Plaintiff's persistent shoulder pain, and failed to provide offsite medical treatment to properly treat his shoulder. (ECF No. 33, at ¶¶ 3, 19-29).

## IV. Plaintiff's Medical Care[1]

8. Plaintiff claims that he began to experience shoulder pain on January 1, 2013. (ECF No. 33, at ¶ 19).

9. On February 1, 2013, Plaintiff was given a prescription for Tylenol 325 mg and placed on the schedule to see a clinician. (Ex.A at 47:14-17).

10. On February 15, 2013, Plaintiff saw Physician's Assistant Latanya Williams in clinic. (Ex.A at 47:22-48:23). PA Williams performed a comprehensive physical examination of

---

[1] Portions of Section IV have been reproduced from Wexford Defendants' L.R. 56.1 Statement of Facts.

2

the Plaintiff's shoulder and found that he provided "poor effort" when she went to test the range of motion in his shoulder. (Ex.A at 47:22-48:23).

11. Per PA Williams, "poor effort" meant that the patient did not put very much effort into participating in her range of motion assessment. (Ex.A at 37:10-15). Nevertheless, despite Plaintiff's non-cooperation, she still increased the Plaintiff's pain medication prescription from 325 mg to 650 mg, and added a prescription for analgesic balm. (Ex.A at 47:22-48:23).

12. On April 11, 2013, Dr. Ann Davis saw the Plaintiff in clinic following his self-report that he was lifting weights in the yard (despite, allegedly, having severe shoulder pain at this time), and dropped a weight on his hand. (Ex.A at 49:5-24). Dr. Davis provided treatment for his hand. (*Id.*).

13. On April 19, 2013, Dr. Davis saw the Plaintiff in clinic and he complained of continuing shoulder pain for two (2) months. (Ex.A at 50:5-22). Dr. Davis switched the Plaintiff's medication from Tylenol to Naproxen. (Ex.A at 50:5-22).

14. On June 6, 2013, the Plaintiff received an x-ray. (Ex.A at 52:23-53:10). He saw Dr. Saleh Obaisi in clinic on June 26, 2013, and told Dr. Obaisi that the Naproxen was not helping. (Ex.A at 53:15-54:6). Based on the Plaintiff's self-report, Dr. Obaisi switched the Plaintiff from Naproxen to Mobic. (Ex.A at 53:15-54:6).

15. On July 18, 2013, the Plaintiff told a nurse that his medications were not helping. (Ex.A at 54:13-55:6). The nurse performed an examination and found that the Plaintiff had no signs or symptoms consistent with distress. (Ex.A at 54:13-55:6).

16. The same day, Dr. Obaisi provided the Plaintiff with a medical permit asking the IDOC to assign him to a low bunk in the cell house, and also to cuff the Plaintiff at the waist rather than behind his back. (Ex.A at 60:4-15).

17. On February 8, 2014, the Plaintiff "no showed" for a scheduled sick call appointment. (Ex.A at 60:24-61:6).

18. On February 13, 2014, he told a nurse that the pain medications helped "a little" and that the injections were providing relief for approximately two (2) months. (Ex.A at 61:12-62:11).

19. In the interim, despite getting relief from the treatment provided by the on-site clinicians, the Plaintiff authored a letter to the State of Illinois demanding an MRI and surgery. (Ex.A at 63:10-18). The letter was routed to Dr. Shicker. (*Id.*)

20. Dr. Shicker reviewed the Plaintiff's case and wrote a letter to the Plaintiff indicating that the decision for an MRI is a clinical decision, depending on functional needs, and Dr. Obaisi was following and treating the Plaintiff symptomatically for his complaints. (*Id.*).

21. IDOC employees cannot override medical professionals who deem an MRI not necessary. (Lemke dep at 80 para 5-11).

22. On May 1, 2014, the Plaintiff presented to sick call and asked for another steroid injection telling the nurse that the pain had only returned "in the last few weeks." (Ex.A at 64:3-5).

23. On May 12, 2014, Dr. Obaisi provided the Plaintiff with a third steroid injection, which Plaintiff testified provided about forty (40) days of relief. (Ex.A at 65:10-14; 66:6-7).

24. On November 12, 2014, Dr. Obaisi saw the Plaintiff in clinic and diagnosed him with chronic tendonitis, ordered an x-ray, and issued a prescription for Naproxen 500 mg which the Plaintiff admitted provided him with some relief at this deposition. (Ex.A at 66:20-67:9). That same day, Dr. Obaisi also renewed the Plaintiff's low bunk permit and issued a front cuffing permit instead of a waist chain permit. (Ex.A at 68:9-25).

25.     Per Plaintiff, Dr. Obaisi told him during this appointment that the security staff complained to the warden about their safety around inmates cuffed with waist chains, Dr. Obaisi changed the Plaintiff from a waist chain permit to a front cuffing permit, to maintain security but also try and provide some relief. (Ex.A at 68:21-69:2).

26.     On November 14, 2014, the x-ray returned negative findings. (Ex.A at 67:12-68:3).

27.     On March 14, 2015, the Plaintiff reported to the staff physician that his right shoulder pain had returned and that the pain was "on and off." (Ex.A at 72:8-73:1). The Plaintiff received a prescription for Naproxen for ninety (90) days. (Ex.A at 73:5-7).

28.     On June 4, 2015, the Plaintiff told Dr. Obaisi that his shoulder pain was "on and off for two years." (Ex.A at 73:1-16). Dr. Obaisi advised that he would make a referral for an offsite consultation with UIC's orthopedic service. (Ex.A at 74:13-23). Plaintiff complained about having a common cold, so Dr. Obaisi provided him with cold medication treatment. (Ex.A at 74:5-8).

29.     In June of 2015, Dr. Obaisi participated in a collegial review discussion with other Wexford physicians, and Wexford approved Dr. Obaisi's recommendation to send the Plaintiff offsite for a consultation with UIC's orthopedic service. (Ex.A at 74:20-23).

30.     On September 16, 2015, the Plaintiff reported to the HCU for treatment of a cut to his hand that he sustained while working his prison job in Stateville's prison. (Ex.A at 76:6-23).

31.     Plaintiff advised that during the same time that he was complaining of, allegedly, severe shoulder pain, he was working in Stateville's kitchen performing multiple jobs. (Ex.A at 76:6-23).

32. On November 24, 2015, the Plaintiff presented to Dr. Obaisi requesting renewal of his low bunk permit. (Ex.A at 78:3-17). Dr. Obaisi noted that the Plaintiff's x-rays were "WNL" (a medical acronym for "within normal limits"); his physical examination was normal; and he demonstrated full range of motion of his shoulder. (Ex.A at 78:3-17). Dr. Obaisi informed the Plaintiff that the Plaintiff was not eligible for a low bunk permit, and the Plaintiff left the room angry. (Ex.A at 78:3-17).

33. On January 19, 2016, the Plaintiff presented to PA Williams, and asked for another shoulder x-ray due to pain. (Ex.A at 79:19-80:19). PA Williams ordered another shoulder x-ray and provided the Plaintiff with pain medications and analgesic balm. (Id.) The Plaintiff received the shoulder x-ray on January 21, 2016, and it was negative for any findings. (Ex.A at 81:21-82:2). The Plaintiff also asked for physical therapy, and PA Williams told the Plaintiff that he was on the waiting list. (Ex.A at 81:9-15).

34. On March 10, 2016, the physical therapist reviewed the Plaintiff's file and scheduled him for an evaluation. (Ex.A at 82:9-14).

35. On March 18, 2016, the Plaintiff presented to PA Williams complaining about heartburn. (Ex.A at 83:1-18). He made no complaints of shoulder pain. (Ex.A at 83:1-18).

36. On March 22, 2016, the Plaintiff transferred from Stateville Correctional Center to Henry Hill Correctional Center in Western Illinois. (Ex.A at 84:15-19). His medical transfer form indicated that the Plaintiff had no active complaints, such as pain, at the time of his transfer. (Ex.A at 84:15-19).

    **a. Michael Lemke**

37. Plaintiff wrote grievances dated July 28, 2013 and October 11, 2013 regarding his medical treatment. (Ex.B at Exhibits 2 and 4).

38. During Lemke's time as warden, designees would review and respond to grievances and letters for the warden's office. (Ex.B at 46:11-14).

39. Lemke did not recall personally reviewing Plaintiff's grievance dated July 28, 2013 and did not personally sign the response. (Ex.B at 52:7-10, 17-19).

40. Plaintiff wrote a letter dated December 9, 2013 addressed to Lemke regarding his medical treatment. (Ex.B at Exhibit 6).

41. Letters received by the Warden's office are stamped when received. (Ex.B at 71:20-21).

42. There was no stamp on the letter addressed to Lemke dated December 9, 2013, and Lemke did not recall ever seeing the letter prior to his deposition. (Ex.B at 71:20-21, 84:18-21).

43. Plaintiff's grievance dated October 11, 2013 was reviewed on October 24, 2014, approximately ten months after Lemke ceased being warden of Stateville. (Ex.B at 13:2-3).

44. Plaintiff did not have any conversations with Lemke about his shoulder issues or anything else. (Ex.B at 112:19-21).

45. As warden, Lemke would defer to medical provider to determine what medical treatment is necessary. (Ex.B at 86:1-4).

**b. Doretta O'Brien**

46. Plaintiff wrote a letter dated December 9, 2013 addressed to O'Brien regarding his medical treatment. (Ex.C at Exhibit 6).

47. Letters addressed to O'Brien would be handled by her secretary and the secretary would refer the matter to the healthcare administrator or grievance counselor for follow-up. (Ex.C at 49:9-19).

7

48. O'Brien was not working at Stateville during the entire month of December, 2013 because she was about to retire. (Ex.C at 49:20-24).

49. O'Brien had not seen Plaintiff's letter addressed to her prior to her deposition. (Ex.C at 49:9-10).

50. O'Brien does not recall having a conversation with Plaintiff, but if O'Brien had a conversation with an inmate about medical issue, she would refer the inmate to medical. (Ex.C at 51:20-24).

51. O'Brien did not have the authority to order an MRI or send anyone to outside treatment. (Ex.C at 52:3-5).

52. O'Brien would defer to the medical provider to determine what medical treatment is necessary. (Ex.C at 58:20-24).

53. O'Brien does not recall ever speaking to Plaintiff about his shoulder pain. (Ex.C at 51:6-7).

   **c. Louis Shicker**

54. Neither of Plaintiff's two claims for alleged deliberate indifference to a serious medical need were directed to Shicker. (ECF No. 33, at ¶¶ 100-122).

55. While Shicker does not recall specifically responding to Plaintiff 's letter addressed the State of Illinois, Shicker's general practice for responding to such letters was to e-mail the facility healthcare unit administrator, the medical director of the facility, the medical director's regional supervisor from Wexford, and the regional nurse that was covering the facility. (Ex.D at 47:22-24, 48:1-10).

56. Shicker relied on the medical director to provide information regarding Plaintiff's care. (Ex.D at 48:19-23).

8

57. Plaintiff testified he does not know who Shicker is, has never met him, has never talked to him, never met with him face-to-face, has never seen him at Stateville, has never been treated by Shicker, has never written to Shicker directly, and has never communicated with Shicker in any way. (Ex.A at 116:8-24, 117:1-2).

| | |
|---|---|
| KWAME RAOUL<br>Attorney General for Illinois | */s/ Shawn M. Peters*<br>Shawn M. Peters<br>Assistant Attorney General<br>Office of the Illinois Attorney General<br>100 W. Randolph St., 13th Floor<br>Chicago, Illinois 60601-3397<br>(312) 814-4752<br>SPeters@atg.state.il.us |

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2019, I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court.

*/s/ Shawn M. Peters*
