IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARL HEMPHILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 15-cv-04968 |
| | ) | |
| GHALIAH OBAISI, *et al.*, | ) | Judge Sharon Johnson Coleman |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, Louis Shicker, Doretta O'Brien, and Michael Lemke, through their attorney, Kwame Raoul, Attorney General for the State of Illinois, under Rule 56, state for their Memorandum of Law in Support of their Motion for Summary Judgment as follows:

**INTRODUCTION**

Defendants should be granted summary judgment, because they were not personally involved in the alleged Eight Amendment violation, and they did not act with deliberate indifference to Plaintiff's alleged serious medical need. Plaintiff claims Defendants violated his Eighth Amendment rights by acting with deliberate indifference to his serious medical needs by denying or delaying medical treatment while he was incarcerated at Stateville Correctional Center. Defendants, however, were not personally involved in or aware of Plaintiff's verbal complaints, grievances, letters, or medical treatment for his shoulder issues, and as such were not deliberately indifferent to those issues. Defendants are entitled to summary judgment because they were not personally involved in the alleged Eighth Amendment violation, and they did not act with deliberate indifference to Plaintiff's alleged serious medical need.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, together with affidavits, show no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Summary judgment is required if "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-movant cannot rely on conclusory allegations and "must present affirmative evidence . . . to defeat a properly supported motion for summary judgment." *Valentine v. Joliet Township High School Dist.*, 802 F.2d 981, 986 (7th Cir. 1986).

Once the moving party informs the Court of the basis for its motion and identifies the supporting documents it believes demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-moving party to demonstrate a genuine issue of material fact. *Valentine*, 802 F.2d at 986. Rule 56(c) requires the non-moving party to go beyond its pleadings and demonstrate the existence of a genuine issue for trial by designating specific facts in its own affidavits, or by depositions, answers to interrogatories and admissions on file. *Celotex*, 477 U.S. at 324.

Here, there is no genuine issue of material fact, and the evidence shows Defendants were not personally involved in nor deliberately indifferent to Plaintiff's alleged serious medical need.

## ARGUMENT

The evidence shows that the Defendants did not have any personal involvement in Plaintiff's medical care. The Defendants did not cause or contribute to denying or delaying

2

treatment for Plaintiff's shoulder.  Furthermore, Defendants did not act with deliberate indifference, because they did not disregard an excessive risk to Plaintiff's health.

**A.      Defendants Were Not Personally Involved**

Liability under Section 1983 requires a defendant's direct, personal involvement. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).  A "plaintiff claiming a violation of Section 1983 must produce evidence that the defendant "caused or participated in [the] constitutional deprivation." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citing, *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996.)).  In other words, "[t]here must be a casual connection or affirmative link between the action complained about and the official sued." *Arnett v. Webster*, 658 F.3d 742, 759 (7th Cir. 2011)

   1. *Michael Lemke*

Defendant Lemke was not personally aware of nor involved in denying or delaying medical treatment for Plaintiff's shoulder, because Lemke never reviewed Plaintiff's grievance, never received Plaintiff's letter, and never had any discussions with Plaintiff about his shoulder. (Defs.' SOF at ¶¶ 38-39, 42-43-44). Lemke's designee reviewed Plaintiff's grievance concerning Plaintiff's medical treatment for his shoulder. (Defs.' SOF at ¶ 38). Lemke's designee would have also reviewed any correspondence addressed to him related to medical treatment. (*Id*.). The undisputed evidence shows the letter was not received by the Warden's office. (Defs.' SOF at  at ¶ 41-42). Even if the Warden's office received the grievance or letter while Lemke was Warden of Stateville, there is no evidence that Lemke had the opportunity to address Plaintiff's grievance. The undisputed evidence establishes that Lemke did not cause or participate in any alleged constitutional violation.

It is well established that a plaintiff cannot attribute liability to a defendant solely on his alleged involvement in the grievance process. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of Owens's grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim."). "If there is 'no personal involvement by the warden outside the grievance process,' that is insufficient to state a claim against the warden." *Neely v. Randle*, 2013 WL 3321451, at *3 (N.D. Ill. June 29, 2013) (quoting *Gevas v. Mitchell*, 492 Fed. App'x 654, 660 (7th Cir. 2012)).

Given that the Lemke never reviewed or even received Plaintiff's grievances or letter, and he never communicated with Plaintiff about his shoulder problems, Defendant Lemke was never personally involved in denying or delaying treatment for Plaintiff's shoulder problems. (Defs.' SOF at ¶¶ 38-39, 42-43-44.). Moreover, under *Owens* and *Gevas*, simply alleging Lemke did not respond timely to a grievance is not direct, personal involvement.

Thus, there is no evidence Lemke caused or participated in denying or delaying Plaintiff's shoulder treatment.

## 2. *Doretta O'Brien*

Defendant O'Brien was also not personally involved in denying or delaying treatment for Plaintiff's shoulder. There is no evidence of any causal connection or affirmative link between O'Brien and Plaintiff's grievances. O'Brien was not at Stateville in December, 2013 when Plaintiff wrote the letter addressed to her, and such letters would have been handled by O'Brien's secretary. (Defs.' SOF at ¶¶ 47-49). However, even if Plaintiff could establish that he complained to O'Brien in-person, O'Brien would have referred these issues to medical. (Defs.' SOF at ¶ 50).

4

O'Brien testified that she did not recall ever interacting with Plaintiff regarding his alleged shoulder issues. (Defs.' SOF at ¶ 53). There are also no documents authored by O'Brien relating to Plaintiff.

Plaintiff cannot establish as a matter of law that O'Brien caused or participated in the alleged denial or delay in Plaintiff's treatment for his shoulder issues.

### 3. *Louis Shicker*

Likewise, Defendant Shicker was not personally involved in denying or delaying treatment for Plaintiff's shoulder issues, because Shicker never treated Plaintiff nor was he involved in anything other than responding to Plaintiff's letter regarding his request for an MRI. (Defs.' SOF at ¶¶ 20, 57). Shicker would have relied on the medical director to provide information regarding Plaintiff's care and would have reached out to the facility healthcare unit administrator, the medical director of the facility, the medical director's regional supervisor from Wexford, and the regional nurse that was covering the facility. (Defs.' SOF at ¶¶ 55-56).

Plaintiff testified he does not know who Shicker is, has never met him, has never talked to him, never met with him face-to-face, has never seen him at Stateville, has never been treated by Shicker, has never written to Shicker directly, and has never communicated with Shicker in any way. (Defs.' SOF at ¶¶ 57).

Therefore, Plaintiff cannot establish that Shicker caused or participated in the alleged denial or delay in Plaintiff's medical treatment for his shoulder issues.

Furthermore, neither of Plaintiff's two legal claims is directed at Shicker. (Defs.' SOF at ¶ 54). As such, Shicker is entitled to summary judgment as a matter of law.

B. **Defendants Did Not Act With Deliberate Indifference**

As discussed above, there is no evidence Defendants were sufficiently involved in the treatment of Plaintiff's shoulder issues. Furthermore, even if they had, there is no evidence Defendants responded in way that was so plainly inappropriate to permit an inference they acted intentionally or recklessly in causing or contributing to the alleged denial or delay in treatment.

"[T]he Supreme Court held that prison officials have a duty to 'ensure that inmates receive adequate food, clothing, shelter, and medical care.'" *Estate of Miller ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th Cir. 2012). A claim for deliberate indifference to a serious medical need contains both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective component requires the prison official's mental state to be one of deliberate indifference to inmate health or safety. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

To satisfy the second element, the plaintiff must show "'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Estate of Miller*, 680 F.3d at 989 (quoting *Sanville v. McCaughtry*, 266 F.3d at 724, 734 (7th Cir. 2001)). A plaintiff does not need to prove his complaints were literally ignored; "rather, he must show only that defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Haywood v. Hathaway*, No. 12-1678, 2016 WL 6988750, at *3 (7th Cir. Nov. 29, 2016) (quoting *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008)).

For example, in *Haywood*, the Seventh Circuit found sufficient evidence that showed the defendant warden knew about the alleged Eighth Amendment violation, and his responses were so plainly inappropriate that the case should go to the trier of fact. No. 12-1678, 2016 WL 6988750, at *4. The plaintiff in *Haywood* filed a Section 1983 lawsuit alleging he lived in

below-freezing temperatures in January 2010, because his cell window was broken and the prison's power failed during a storm for four days. *Haywood*, No. 12-1678, 2016 WL 6988750, at *4.

The Seventh Circuit found enough evidence to warrant surviving summary judgment, because there was evidence that showed defendant knew of the extreme cold conditions in segregation and the causes of the cold in light of defendant's answers to interrogatories stating he knew the ice storm caused the power loss and he toured the segregation section. *Haywood*, No. 12-1678, 2016 WL 6988750, at *4–5. The Court further found the evidence to show that the defendant's response that he ensured the generators were operating and had maintenance perform periodic temperature checks were plainly inappropriate to the extreme weather conditions to allow the inference he acted with deliberate indifference. *Haywood*, No. 12-1678, 2016 WL 6988750, at *4–5.

As set forth below, in this case there is no evidence that the Defendants were sufficiently involved in Plaintiff's shoulder issues, or that their response was so plainly inappropriate to permit an inference that they acted intentionally or recklessly in causing or contributing to the alleged denial or delay in treatment.

   *1. Michael Lemke*

Defendant Lemke was the Warden of Stateville in July, 2013, when Plaintiff purportedly filed his first grievance seeking medical treatment for shoulder. (Defs.' SOF at ¶¶ 2, 37) Unlike *Haywood* though, there is no evidence that Lemke had any knowledge of Plaintiff's shoulder issues as he did not have any conversations with Plaintiff regarding these issues, and he did not personally review or respond to Plaintiff's July 28, 2013 grievance. (Defs.' SOF at ¶¶ 38-39, 44). There is no evidence Lemke ever received Plaintiff's letter dated December 9, 2013, and Lemke

7

was no longer warden of Stateville when the response was written to Plaintiff's October 11, 2013 grievance. (Defs.' SOF at ¶¶ 2, 42). There is also no evidence Lemke engaged in any conduct that was so plainly inappropriate to permit an inference of intentional or reckless conduct in causing or contributing to the alleged denial or delay in Plaintiff's medical treatment.

## 2. *O'Brien and Shicker*

Similarly, there is no evidence Defendants O'Brien and Shicker had sufficient personal involvement in Plaintiff's medical care for his shoulder issues, or that their responses were so plainly inappropriate to permit an inference that they acted intentionally or recklessly in causing or contributing to the alleged denial or delay in treatment.

While O'Brien does not specifically recall having a conversation with Plaintiff, O'Brien testified that, if she had a conversation with an inmate about a medical issue, she would refer the inmate to medical and would defer to the medical provider to determine what medical treatment is necessary. (Defs.' SOF at ¶¶ 50-52). Likewise, Shicker relied on the medical director to provide information regarding Plaintiff's care and noted Dr. Obaisi was treating Plaintiff symptomatically for his shoulder issues. (Defs.' SOF at ¶¶ 20, 56). In fact, Plaintiff was seen by medical personnel at least 18 times and was provided treatment for his shoulder issues. (Defs.' SOF at ¶¶ 9-35).

Furthermore, there is no evidence that either O'Brien or Shicker engaged in any response that was so plainly inappropriate to permit an inference that they acted intentionally or recklessly in causing or contributing to the alleged denial or delay in treatment. There is no evidence that O'Brien or Shicker refused to contact the medical director on behalf of Plaintiff. Rather, Shicker verified Plaintiff was being treated symptomatically by Dr. Obaisi, and O'Brien testified she

8

would have referred Plaintiff to medical if she had any such conversations with Plaintiff. (Defs.' SOF at ¶¶ 20, 50).

Because there is no evidence that Defendants were sufficiently involved in Plaintiff's medical care for his shoulder issues, and there is no evidence that any of the Defendants responded in way that was so plainly inappropriate to permit an inference that they acted intentionally or recklessly in causing or contributing to the alleged denial or delay in treatment, there is no Eighth Amendment violation. As such, Defendants Lemke, O'Brien, and Shicker are entitled to summary judgment as a matter of law.

## CONCLUSION

In sum, there is no evidence Defendants were personally involved in Plaintiff's alleged constitutional violation, and they did not act with deliberate indifference to Plaintiff's alleged serious medical need. For these reasons, Defendants should be granted summary judgment.

Respectfully submitted,

KWAME RAOUL
Attorney General for Illinois

   */s/ Shawn M. Peters*
Shawn M. Peters
Assistant Attorney General
Office of the Illinois Attorney General
100 W. Randolph St., 13th Floor
Chicago, Illinois 60601-3397
(312) 814-4752
SPeters@atg.state.il.us

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2019, I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court.

*/s/ Shawn M. Peters*